

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| MARK DAVIS, | § | No. 08-12-00067-CV |
| Appellant, | § | Appeal from the |
| v. | § | County Court at Law Number Three |
| NORMA CHAPARRO, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 2010-2059) |
| | § | |

## **O P I N I O N**

Appellant, Mark Davis, appeals the trial court's finding of breach of contract and its award of $2,750 on the contract and $5,433.68 in attorney's fees in favor of Appellee, Norma Chaparro. We affirm.

## **BACKGROUND**

Davis is an attorney. He instructed his office manager, Lisa Rodriguez, to seek a translator to translate a recorded conversation on an audio cassette tape in a post-divorce case for Davis's client, Mario Vizcarra. Rodriguez called Chaparro, a certified translator who had previously provided interpretation services during depositions for Davis's law office. Chaparro told the office employee who contacted her that she could perform the translation services.

Davis's office subsequently provided Chaparro a copy of the recording. During their initial conversation, Rodriguez and Chaparro did not discuss a price for the services. Rodriguez understood Chaparro could not provide a fee quote without examining the tape.

The tape contained a recorded conversation between an unidentified male and an unidentified female speaking Spanish and was about an hour and twelve minutes in duration. Chaparro first transcribed the conversation in Spanish and then translated it to English. Upon experiencing difficulty with the transcription and translation of the recording, Chaparro enlisted the help of another translator, her sister Susana Chaparro. When Susana contacted Davis's office regarding the inaudibility of the tape recording, Rodriguez instructed Susana to acquire another copy from opposing counsel on Vizcarra's case. Susana obtained the additional copy of the tape. During follow-up conversations, Susana informed Davis's office staff the transcription would exceed fifty pages, and the office staff reiterated to her the importance of getting the transcript done regardless of what the translators needed to do to finish it. The finished transcript comprised 110 pages.

Chaparro delivered the transcript to Davis's home in late August 2009, and Davis accepted delivery of the transcript. Chaparro sent her bill for the transcription and translation services to Davis's office on September 16, 2009. Chaparro charged $25 per page for 110 pages totaling $2,750. She offered a courtesy discount of $1,250, and requested payment of $1,500. Davis failed to pay Chaparro.

After seven months of nonpayment, Chaparro spoke with Davis directly in April 2010. During that conversation, Davis told Chaparro to seek payment from his client, Mario Vizcarra. Chaparro had no desire to track down a client unknown to her for payment because she believed

the contract for translation services to be between herself and Davis. Chaparro filed suit against both Davis and Vizcarra for breach of contract and collection of the debt. Chaparro non-suited Vizcarra before trial commenced.

At the bench trial on September 23, 2011, Davis contested the continuance of the proceedings absent Vizcarra's presence as a party, and the trial court denied Davis's Rule 39 motion to dismiss the case for failure to join a person necessary for the adjudication. *See* TEX. R. CIV. P. 39(a)(b) (a person should be joined as a party, if in their absence, complete relief cannot be accorded to those already parties; if the person cannot be made a party, the court shall determine whether in equity and good conscience, the action should proceed or be dismissed).

During trial, conflicting testimony was presented regarding who was a party to the initial conversation between Davis's office and Chaparro. Chaparro testified she spoke with one of the ladies at Davis's office, but did not remember with whom she had spoken when she initially agreed to translate the tape. Rodriguez testified she spoke only to Susana on the phone, both during the initial conversation regarding translation services and thereafter. Susana testified that her only conversations with Davis's office pertained to the length of the transcription, the quality of the recording that was being translated, and obtaining another copy of the tape. Both Chaparro and Susana testified that Chaparro had already begun transcribing the recorded conversation and only enlisted aid from Susana as a second translator after experiencing difficulties with the quality of the recording.

Chaparro also testified regarding her billing practices. Among the factors Chaparro considers when billing a client are the quality of the material to be translated, the type of equipment available for use in translating, the time frame available for completing the translation,

3

how "wordy" the material is, the type of work to be performed, such as transcribing, interpreting, translating, the amount of time actually required to complete the job, how technical the language being translated is, and the expertise of the translator. Chaparro stated that she decided to offer a courtesy discount to Davis, in part, because she hoped for quick payment. When Chaparro had worked as an interpreter for Davis's office in the past, she billed and received payment directly from Davis. It is Chaparro's common business practice to bill and collect payment from attorneys rather than their clients.

Susana testified about her knowledge of fees reasonably and customarily charged by translators in the geographic area for this type of work. In Susana's opinion, the $2,750 fee Chaparro charged Davis was reasonable. Susana also testified it is an industry practice for interpreters and translators to contract with and receive payment from an attorney and not the attorney's client.

Freelance interpreter Estela Balderrama also testified to the factors which are taken into account when determining a fee for translation work. In Balderrama's opinion, $2,750 is a very fair rate for the work Chaparro completed for Davis because Chaparro could have charged a higher rate. When Balderrama performs work for a law firm, she bills and receives payment from the attorney or law firm that hired her, not the attorney's client.

Rodriguez, Davis's office manager, testified to the billing and payment practices of Davis's office for third-party services. According to Rodriguez, she does not guarantee payment on behalf of clients to third-party providers such as private investigators, translators, process servers, etc. Clients pre-pay any expenses to Davis, and when the office receives the funds, it pays the third-party provider directly. Rodriguez explained that the usual billing procedure was

4

not followed in this case because the translation fee could not be quoted in advance.

Rodriguez was certain during the initial conversation that she had clearly communicated to Susana the recording to be translated was for Davis's client Mario Vizcarra. Chaparro testified she did not remember hearing Vizcarra's name before she asked the office staff how to reference the completed transcript. The transcript refers to the voices on the recording as an unidentified male and unidentified female.

Vizcarra testified he authorized Davis to hire someone to translate the tape recording. When he was forwarded the bill for Chaparro's services, he thought it was very expensive and did not pay it. At the conclusion of the bench trial, the trial court entered findings of fact and conclusions of law and determined the following:

> There is a valid enforceable contract;
> Plaintiff is a proper party to sue for the breach of contract;
> Plaintiff performed and tendered performance of her contractual obligations;
> Defendant Mark Davis breached the contract by not paying;
> Defendant Mark Davis' breach caused Plaintiff Norma Chaparro's injury, i.e., nonpayment;
> The amount owed by Defendant on the contract is $2,750;
> There was no disclosure of a responsible principal at the time the contract was entered into; and
> Plaintiff is entitled to reasonable attorney's fees in the amount of $5,433.68, which includes expenses of $852.63.

## DISCUSSION

Davis raises ten issues on appeal. In Issues Two, Three, Five, and Eight, Davis challenges the trial court's finding of a valid and enforceable contract.

### Validity of the Contract

*Standard of Review*

We review a trial court's findings under the same legal and factual sufficiency standards

5

used to determine whether or not the evidence is sufficient to support a jury verdict. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Trinity Drywall v. Toka Gen. Contrs.*, 416 S.W.3d 201, 207 (Tex. App.—El Paso 2013, pet. filed). In a bench trial, the judge as fact finder determines the credibility of witness testimony taking into consideration the facts and circumstances in connection with the testimony. *Mekeel v. U.S. Bank Nat. Ass'n*, 355 S.W.3d 349, 358 (Tex. App.—El Paso 2011, pet. dism'd). The trial court is free to accept or reject any part of a witness's testimony. *Id.* This court will not substitute its own judgment for that of the fact finder as long as the evidence falls within a zone of reasonable disagreement. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005); *In re B.A.W.*, 311 S.W.3d 544, 549 (Tex. App.—El Paso 2009, no pet.).

When raising a challenge on the legal sufficiency of an adverse finding to which the party did not bear the burden of proof below, they must show there is no evidence to support the finding. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 215 (Tex. 2011). If there is anything more than a scintilla of evidence to support the finding, it is legally sufficient. *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). More than a scintilla of evidence exists when it is at a level which enables reasonable and fair-minded people to differ in their conclusions. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

When a party challenges the factual sufficiency of the evidence, we consider, weigh, and examine all of the evidence in the record, including evidence in support of and evidence against the finding. *Region XIX Serv. Ctr. v. Banda*, 343 S.W.3d 480, 489 (Tex. App.—El Paso 2011, pet. denied). We will only set aside a finding as factually insufficient if the evidence to support it is so

weak as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Banda*, 343 S.W.3d at 489.

*Analysis*

A valid and enforceable contract requires the following elements: (1) an offer; (2) acceptance of which complies with the terms of the offer; (3) a meeting of the minds; (4) consent by each party to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *IHS Acquisition No. 171, Inc. v. Beatty-Ortiz*, 387 S.W.3d 799, 806 (Tex. App.—El Paso 2012, no pet.); *Cessna Aircraft Co. v. Aircraft Network, L.L.C.*, 213 S.W.3d 455, 465 (Tex. App.—Dallas 2006, pet. denied). To determine the existence of an oral contract, a court looks to the communications between the parties, as well as the acts and circumstances surrounding their communications. *Cessna*, 213 S.W.3d at 465. An implied contract is one that arises when the acts and conduct of the parties imply a mutual intention to contract. *In Re Marriage of Eilers,* 205 S.W.3d 637, 641 (Tex. App.—Waco 2006, pet. denied). In the case of an implied contract, mutual agreement is inferred from the circumstances rather than expressly stated. *Haws & Garrett General Contractors Inc. v. Gorbett Bros. Welding Co.,* 480 S.W.2d 607, 609 (Tex. 1972); *see also Mann Frankfort Stein & Lipp Advisors Inc. v. Fielding,* 289 S.W.3d 844, 850 (Tex. 2009).

In Issue Two, Davis challenges the legal and factual sufficiency of the evidence to support the trial court's determination that a valid contract existed because he did not promise to pay Chaparro for her translation services. A promise, acceptance of which will form a contract, is an assurance or manifestation of an intention to act or refrain from acting in such a way that a commitment has been made. *City of Houston v. Williams*, 353 S.W.3d 128, 138 (Tex. 2011)

7

(quoting *Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998)). Davis's office staff approached Chaparro to take a job similar to those she had performed in the past for Davis and for which he had paid her. Davis provided the tape recording to Chaparro and Davis accepted the completed transcript at his home. In accordance with her past billing practices, Chaparro billed Davis's office expecting payment.

Based on the circumstances, the parties' course of conduct and their earlier business dealings, the trial court's determination that Davis manifested an intention to pay Chaparro for her work is within a zone of reasonable disagreement. *City of Keller*, 168 S.W.3d at 822; *see also Haws & Garrett,* 480 S.W.2d at 610 (existence of a contract rests upon the inferences drawn by the trier of fact from the surrounding facts and circumstances); *Domingo v. Mitchell*, 257 S.W.3d 34, 41 (Tex. App.—Amarillo 2008, pet. denied) (promises to cover expenses and reimburse payment based on the parties' conduct and prior course of dealings was sufficient consideration to create a binding contract). More than a scintilla of evidence exists to support the trial court's implied finding that Davis promised to pay Chaparro for her services. Therefore, the trial court's finding is supported by legally sufficient evidence. *Formosa Plastics Corp.,* 960 S.W.2d at 48. Having examined all the evidence, we conclude it is not so weak as to be clearly wrong or manifestly unjust, and is factually sufficient to support the trial court's finding of a valid, enforceable contract. *Cain*, 709 S.W.2d at 176. Issue Two is overruled.

Issue Five claims the evidence was legally and factually insufficient to support a finding that the conversation between Davis's office and Chaparro demonstrated a meeting of the minds to permit the fact finder to conclude the parties entered into a valid contract. When determining if a meeting of the minds occurred, a court uses an objective standard of the parties' communications

and actions and not their subjective states of mind. *Stewart Title Guar. Co. v. Mims*, 405 S.W.3d 319, 339 (Tex. App.—Dallas 2013, no pet.); *see also Franco v. Ysleta I.S.D.,* 346 S.W.3d 605, 608 (Tex. App.—El Paso 2009, no pet.).

Davis argues the parties did not agree on specific elements to form a contract during their initial conversation including price, time frame for completion of the work, and Chaparro's express acceptance to perform the work. Instead, Davis maintains Chaparro only represented she was available to perform the translation, not that she would do it. Davis's argument centers on the initial conversation with Chaparro. However, the trial court was permitted to find a valid contract existed based on all the parties' conversations as well as the acts and circumstances surrounding them. *Cessna*, 213 S.W.3d at 465. Davis's office had hired Chaparro in the past and she had been paid directly in those circumstances. Additionally, Rodriguez testified she knew she could not receive an accurate fee quote during the initial conversation because Chaparro was not in possession of the tape to be translated. Davis's office provided Chaparro the tape to be translated, engaged in follow-up conversations with Susana regarding the translation of the tape, instructed Susana to obtain a copy of the tape from opposing counsel, and requested the translation be finished regardless of what needed to be done to complete it. Because there is more than a scintilla of evidence to support a finding that a meeting of the minds existed between the parties, the evidence is legally sufficient. *Formosa Plastics Corp.*, 960 S.W.2d at 48. Having considered all the evidence, we conclude it is not so weak as to be clearly wrong or manifestly unjust. As such, the trial court's finding is also factually sufficient. *Banda*, 343 S.W.3d at 489. Issue Five is overruled.

In Issue Three, Davis asserts the parties' inability to agree on a price for translation

precludes a finding that a meeting of the minds existed between them regarding the reasonable value of Chaparro's services because other essential terms of the contract were left unsettled. In Issue Eight, Davis asserts no contract was formed because the parties had no meeting of the minds regarding the price Chaparro would charge Davis for her translation services. We address these issues together.

When a contract is lacking an agreement on price but all other elements have been met, it is not so incomplete as to be rendered unenforceable. *Inimitable Group, L.P. v. Westwood Group Dev. II, Ltd.*, 264 S.W.3d 892, 899 (Tex. App.—Fort Worth 2008, no pet.); s*ee also Pennington v. Jerry F. Gurkoff, D.O., P.A.*, 899 S.W.2d 767, 770 (Tex. App.—Fort Worth 1995, writ denied). The court may imply a reasonable price. *Inimitable Group,* 264 S.W.3d at 899. Davis argues several essential elements of the contract other than price were missing, therefore, it could not have been enforceable. The essential terms Davis claims were absent include an agreement on who was responsible for paying Chaparro, and the date by which the work would be completed. Davis further argues in Issue Eight that the lack of an industry standard by which translators bill for their services means a meeting of the minds on a reasonable price could not have been reached.

Chaparro did not discuss a specific fee for the translation work during her initial conversation with Davis's office. Rodriguez testified she knew she would not be able to receive a fee quote before Chaparro reviewed the recording. This is some evidence that Davis's staff understood the industry standards that fees for translation jobs are determined by a number of subjective factors. Susana discussed with Davis's office the difficulty of translating the tape, how to obtain a better quality copy of the recording, and the fact that the transcript would be more than fifty pages in length. Davis's staff was aware that completion of the transcript would require

10

additional time and reminded Susana on the importance of getting the transcription done regardless of what they needed to do to finish it. Davis requested the work be performed and eventually accepted delivery of the completed transcript at his home. Although a fee arrangement was not specified during the initial conversation to contract Chaparro's translation services, the evidence supports the trial court's implied finding that there was a meeting of the minds to pay a reasonable fee for the services rendered. *Inimitable Group,* 264 S.W.3d at 899. Therefore, the contract is still enforceable absent an express agreement on the price. *See also Pennington,* 899 S.W.2d at 770. Issues Three and Eight are overruled.

### Failure to Disclose

In Issue Four, Davis challenges the legal and factual sufficiency of the evidence to support the trial court's finding that no disclosure of a responsible principal occurred at the time Chaparro was contracted to translate the tape.

When an attorney contracts with a third party for goods or services to be used in connection with his representation of a client and the third party is aware of these facts, the attorney is not personally liable on the contract unless he either expressly or impliedly assumes special liability. *Eppler, Guerin & Turner, Inc. v. Kasmir*, 685 S.W.2d 737, 738 (Tex. App.—Dallas 1985, writ ref'd n.r.e.). The law does not carry a presumption of agency. *Wright Group Architects-Planners, P.L.L.C. v. Pierce*, 343 S.W.3d 196, 200 (Tex. App.—Dallas 2011, no pet.). The party claiming agency as an affirmative defense bears the burden of proof and must prove both disclosure of its representative capacity and disclosure of the identity of the principal occurred. *Id.* Disclosure must have been given at the time the parties entered into the contract to be sufficient. *Gordon v. Leasman,* 365 S.W.3d 109, 115 (Tex. App.—Houston [1st Dist.] 2011, no

11

pet.).

*Standard of Review*

When challenging the legal sufficiency of an adverse finding on an issue where the claimant bore the burden of proof, the claimant must show as a matter of law, that the evidence supports all vital facts of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). The trial court as fact finder is free to determine the credibility and amount of weight to give any contradictory evidence. *Mekeel*, 355 S.W.3d at 358. For a matter of law challenge, a reviewing court first looks for evidence supporting the finding and ignores evidence contradictory to the finding. *Primera Enterprises, Inc. v. Autrey,* 349 S.W.3d 167, 169 (Tex. App.—El Paso 2011, no pet.). If there is no evidence in support of the finding, then we examine the whole record and determine if there is evidence to support the contrary position as a matter of law. *Id.* The evidence is legally insufficient only when the contrary position is conclusively established. *Dow Chem. Co.*, 46 S.W.3d at 241. We will only set aside a finding as factually insufficient if after reviewing all the evidence, it is apparent the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Id*. at 242.

*Analysis*

Davis maintains that he cannot be liable for payment of Chaparro's services because he did not personally enter into a contract with Chaparro, but did so as the agent of a disclosed principal. Davis asserts there is no evidence in the record establishing his failure to disclose his client's identity when Rodriguez, his office manager, first spoke to Chaparro. Because Rodriguez first spoke to Susana, who was working with Chaparro on the translation, Davis contends Chaparro's testimony that she did not remember if she was told the identity of the client before she had

12

completed the transcript was insufficient to prove his failure to disclose his client's identity. Davis's argument contains a misstatement of the standard of review by claiming there was no proof he failed to disclose the identity of his client when he bore the burden to prove he disclosed the identity of his client. *Wright Group Architects-Planners*, 343 S.W.3d at 200.

The only evidence Davis set forth to prove disclosure is Rodriguez's testimony she clearly communicated the translation was for Mario Vizcarra during her initial conversation with whom she believes was Susana. Davis's position relies on Rodriguez's testimony she only spoke with Susana and never with Chaparro. Chaparro and Susana provided contradictory testimony regarding this fact. Chaparro testified she first spoke with Davis's office about taking the job and did not bring her sister in as a second translator until she experienced difficulty with the tape. Susana testified her sister had already begun transcription before she became involved, and she only spoke with Davis's office staff in subsequent conversations regarding the length of the transcript, the inaudibility of the tape, and how to obtain an additional copy. Additionally, when Susana spoke with opposing counsel about obtaining another copy of the tape, she referred to it as the Davis tape. Chaparro testified she did not remember hearing the client's name until she had completed the transcript and inquired how to reference the job. On the transcript, the voices are identified as an unidentified male and an unidentified female.

To determine if the evidence was legally sufficient to support the trial court's finding Davis did not disclose his agency status or the identity of his client, we first examine the record for evidence supporting the finding. *Primera Enterprises, Inc.,* 349 S.W.3d at 169. Chaparro testified she had no memory of hearing the name of the client for whom the translation was done until she contacted the office in regards to referencing the finished product for delivery.

13

Additionally, the transcript listed the parties on the tape as unidentified male and unidentified female, suggesting Chaparro did not know the names of Mr. Vizcarra and his ex-wife to use as identifiers. We note that mere disclosure of the client's name in this context is not sufficient to establish Davis's agency status. Davis must also prove disclosure of his representative capacity as an agent occurred at the time the contract was entered into. *Wright Group*, 343 S.W.3d at 200; *Gordon*, 365 S.W.3d at 115.

Davis asserts he cannot not be personally liable for the contract because Chaparro knew the transcription was requested on behalf of his client and he did not expressly or impliedly assume special liability for the contract. *Eppler,* 685 S.W.2d at 738. However, when an attorney contracts third-party services on behalf of a client without specifying his agency status, the attorney may assume special liability for payment of the services. *See Nagle v. Duncan*, 570 S.W.2d 116, 117 (Tex. Civ. App.—Houston [1st Dist.] 1978, writ dism'd) (attorney was liable to court reporter for payment on preparation of a record when the attorney's office requested the record and paid the deposit for the record); *Murphy v. Cain*, 711 S.W.2d 302, 304 (Tex. App.—Dallas 1986, no writ) (attorney orally contracted with a court reporter to work at depositions, although the reporter knew the services were to be performed on behalf of a client, the attorney was personally liable because he contacted and contracted with the reporter). Davis's office staff contacted Chaparro and did not specify that the client, Vizcarra, would be responsible for payment. Davis had paid Chaparro in the past for translation services at depositions. Chaparro's common business practice is to bill and collect payment from the attorneys she provides services to and not their clients. Additionally, Davis's office collects payment from clients for third-party services and then pays the third-party provider directly. Absent an express

14

disclosure of Davis's agency status at the time the contract with Chaparro was formed, the evidence supports an implied finding that Davis expressly or impliedly assumed special liability and is responsible for payment of the contract. *See Nagle*, 570 S.W.2d at 117; *Murphy*, 711 S.W.2d at 304.

Having found evidence in the record to support the trial court's finding that no disclosure of a responsible principal occurred, we need not reach the second part of the analysis and examine the record for evidence contradictory to the finding. *Primera Enterprises, Inc.,* 349 S.W.3d at 169. Therefore, the evidence is legally sufficient and Davis's matter of law challenge fails. *Dow Chem. Co.*, 46 S.W.3d at 241. The finding is also factually sufficient based on a review of all the evidence because it is not so against the weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Id*. at 242. Issue Four is overruled.

## Damages

In Issue Six, Davis claims the trial court abused its discretion by awarding Chaparro $2,750 in actual damages when the maximum amount she should have recovered was $1,500. In Issue Seven, Davis states he is entitled to a new trial on the amount of attorney's fees awarded because of the excessive damages awarded to Chaparro as raised in Issue Six.

### *Standard of Review*

The trier of fact is afforded broad discretion in awarding damages within the range of evidence before it. *Rhey v. Redic*, 408 S.W.3d 440, 455 (Tex. App.—El Paso 2013, no pet.). When a rational basis exists to support the amount of the damages award, it will not be disregarded or set aside. *Rojas v. Duarte*, 393 S.W.3d 837, 845 (Tex. App.—El Paso 2012, pet. denied). The universal rule for measuring damages for breach of contract is just compensation for the loss or

15

damage actually sustained.   *Dakil v. Lege,* 408 S.W.3d 9, 12 (Tex. App.—El Paso 2012, no pet.).

This is also commonly referred to as the benefit of the bargain.   *Bowen v. Robinson*, 227 S.W.3d

86, 96 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).   Under the implementation of this rule,

a party should not receive less or more than the actual damages they incurred.   *Abraxas Petroleum*

*Corp. v. Hornburg*, 20 S.W.3d 741, 760 (Tex. App.—El Paso 2000, no pet.).

*Analysis*

The trial court found a valid, enforceable contract existed and the amount owed on it was

$2,750.   Both parties acknowledge they did not agree upon a specific price at the inception of the

contract because Chaparro was unable to quote a fee for her services without access to the tape.

Davis's office was made aware of the difficulties Chaparro had regarding the audibility of the tape

and the need for a second copy.   Chaparro testified as to the factors considered when determining

a fee for translation work.   Susana Chaparro and Estela Balderrama, both professional translators,

corroborated Chaparro's testimony that a fee is determined on a case-by-case basis using the

specified factors, and opined that the rate charged in this case was reasonable.   Based on the

circumstances and difficulties of this particular job, Chaparro invoiced her work at $25 per page,

with 110 pages completed for a total of $2,750.   She then offered Davis a courtesy discount of

$1,250, requesting payment of $1,500.

Davis asserts the trial court abused its discretion by awarding Chaparro the full $2,750

when she only expected payment of $1,500.   However, expectation is not the standard of

determining damages for breach of contract.   Rather, the fact finder determines just compensation

as the value of the loss or damage actually sustained.   *Dakil,* 408 S.W.3d at 12.   The value of the

service Chaparro provided was $2,750, and her decision to offer a discount at the time she billed

16

Davis does not change the value of the work. *See Feder-Gregg Shoe Co. v. Big Four Shoe Store Co.*, 284 S.W. 717, 719 (Tex. Civ. App.—Austin 1925, no writ) (buyer is not entitled to the discount that had been offered if buyer paid in full within a certain amount of time). Because there is a rational basis for the amount of damages awarded, the reasonable rate as charged on the invoice absent the courtesy discount, the trial court did not abuse its discretion in awarding Chaparro $2,750, and we will not set aside or disregard its award on damages. *Rhey*, 408 S.W.3d at 455; *Rojas*, 393 S.W.3d at 845. Issue Six is overruled. Davis's argument in Issue Seven is predicated on Issue Six being sustained. Having overruled Issue Six, we need not reach the merits of Issue Seven. Issue Seven is overruled.

### Attorney's Fees

In Issue One, Davis asserts the trial court abused its discretion by awarding Chaparro attorney's fees because Chaparro did not actually incur attorney's fees when her husband represented her, and contends Chaparro was not planning to pay for the representation. In Issue Ten, Davis contends the trial court's attorney's fees award calculated at $275 per hour was excessive because the lodestar method warranted a lower rate.

To preserve error for appellate review, a party must present a complaint before the trial court through a timely request, objection or motion and the trial court must either rule on the complaint, or refuse to rule and the party objects to the refusal. TEX. R. APP. P. 33.1(a); *see Dodge v. Dodge*, 314 S.W.3d 82, 85, 86 n.3 (Tex. App. – El Paso 2010, no pet.) (appellant's complaints regarding attorney's fees were overruled for failure to present before the trial court). Davis did not object to the award of attorney's fees after the trial court stated its findings of facts and conclusions of law or file a post-judgment motion contesting the award of attorney's fees.

Because Davis failed to present his complaints regarding attorney's fees to the trial court, they are not preserved for our consideration on appeal. *Dodge*, 314 S.W.3d at 86 n.3. Issues One and Ten are overruled.

**Motion to Dismiss for Failure to Join**

In Issue Nine, Davis contends the trial court's denial of his motion to dismiss for failure to join a party necessary to the proceedings was error. Davis argued before the trial court that his client, Mario Vizcarra, was a necessary party to the litigation, and absent his joinder, the case should be dismissed pursuant to Texas Rule of Civil Procedure 39. TEX. R. CIV. P. 39.

Mario Vizcarra was initially a party to the litigation, but was non-suited by Chaparro prior to trial. Davis's brief claims the trial court's denial of his Rule 39 motion failed to protect him from a later suit by Vizcarra. However, he cites no legal authority and fails to present a clear and concise legal argument to support his claim that he was entitled to dismissal based on his Rule 39 motion. Therefore, Davis has waived this issue based on inadequate briefing. *See* TEX. R. APP. P. 38.1(i) (argument section of brief must contain a clear and concise argument with proper citations to the record and legal authority). *See also Foster v. City of El Paso*, 396 S.W.3d 244, 258 (Tex. App.—El Paso 2013, no pet.). Issue Nine is overruled.

**CONCLUSION**

The judgment of the trial court is affirmed.


GUADALUPE RIVERA, Justice

April 11, 2014

Before McClure, C.J., Rivera, and Rodriguez, JJ.


18