**AFFIRMED; Opinion Filed August 21, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-01085-CV

**ROBERT J. REAGAN, Appellant**

**V.**

**NATIONSGAS PARTNERS, LLC; ROBERT F. MILLER, JR.; AND SHAWN MILLER, Appellees**

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-13584**

## MEMORANDUM OPINION

Before Justices Myers, Molberg,[1] and Carlyle
Opinion by Justice Myers

Robert J. Reagan appeals the summary judgment granted in favor of NationsGas Partners, LLC, Robert F. Miller, Jr., and Shawn Miller on his claims for breach of contract, quantum meruit, and fraudulent transfer.[2] Reagan brings two issues on appeal contending the trial court erred by granting the motion for summary judgment on his causes of action for breach of contract and quantum meruit. NationsGas and the Millers bring one issue requesting damages under Texas

---

[1] Justice Partida-Kipness substituted for Justice Molberg at oral argument only. Justice Molberg has read the briefs, listened to the recording of the oral argument, and reviewed the record.

[2] Reagan's claims for breach of contract and quantum meruit were against NationsGas; his claim for fraudulent transfer was against NationsGas and the Millers. On appeal, Reagan does not challenge the grant of summary judgment on the claim for fraudulent transfer. Accordingly, we affirm the trial court's judgment in favor of the Millers, and we only address .his claims against NationsGas for breach of contract and quantum meruit.

Rule of Appellate Procedure 45 because Reagan's appeal is frivolous. We affirm the trial court's judgment.

## BACKGROUND

Robert Miller is the manager of NationsGas. His wife, Shawn Miller, is a member of NationsGas. In 2013, NationsGas hired attorney Carl Adams to represent it in a lawsuit against a former employee who had embezzled hundreds of thousands of dollars (Sanchez lawsuit). Robert Miller signed Adams's attorney–client agreement as the manager of NationsGas. The agreement stated that NationsGas would advance money to Adams or reimburse Adams for expenses he incurred, including "expert witness and consultant fees . . . and any other expense related to the Attorney's efforts on behalf of Client." NationsGas promised to reimburse Adams for the expenses within ten days of a written request by Adams. The agreement also permitted Adams "to associate with other attorneys to aid in the investigation and/or prosecution of this claim," but Adams was responsible for paying those attorneys.

Two weeks before the trial in the Sanchez lawsuit, Adams asked Reagan, who is an attorney, to create a computer-generated visual presentation to aid in presenting evidence to the jury. Reagan spent 31.5 hours on the case before trial, and his staff spent another 26.5 hours on the case. On the first day of the trial, Reagan presented his pre-trial invoice to Adams and Shawn Miller for $10,082.20.

During the week-long trial, Reagan operated the audio-visual equipment in the courtroom. In his subsequent invoice to NationsGas, he stated he made a "Court appearance to assist with trial. Arrange[d] exhibits, research, consultation, and present[ed] graphic evidence," The invoice also states he "[c]onsult[ed] on jury selection," "[c]onsult[ed] regarding jury charge" and his staff "[r]esearch[ed] case law to ascertain viability of 'Willful Blindness' Jury Instruction." The invoice states he spent 34.05 hours on the trial and that his staff spent 3.4 hours. The evidence also

showed Reagan engaged in other tasks not listed on the invoices, including attending conferences in the trial judge's chambers and receiving the jury verdict when Adams was not present on the last day of the trial. Reagan presented his invoice for his services during the trial for $7,320.

Reagan addressed his invoices to NationsGas, care of Adams. NationsGas refused to pay Reagan. Reagan filed suit against NationsGas for breach of contract and quantum meruit.[3] NationsGas moved for summary judgment, which the trial court granted.

## STANDARD OF REVIEW

The standard for reviewing a traditional summary judgment is well established. *See McAfee, Inc. v. Agilysys, Inc.*, 316 S.W.3d 820, 825 (Tex. App.—Dallas 2010, no pet.). The movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). In deciding whether a disputed material fact issue exists precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *In re Estate of Berry*, 280 S.W.3d 478, 480 (Tex. App.—Dallas 2009, no pet.). Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005). We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp.*, 12 S.W.3d 172, 175 (Tex. App.—Dallas 2000, pet. denied).

## BREACH OF CONTRACT

In his first issue, Reagan contends the trial court erred by granting NationsGas's motion for summary judgment on his claim for breach of contract. NationsGas's motion for summary judgment asserts there was no contract requiring it to pay Reagan for his services.

---

[3] The record does not show whether Reagan brought suit against Adams.

The controversy in this issue includes the interplay of two provisions in the attorney–client agreement between Adams and NationsGas. Section 4 of the agreement concerned NationsGas's duty to advance payment to Adams or reimburse Adams for the expenses of the litigation:

> **4). Expenses:** Client agrees that any and all reasonable expenses incurred by Attorney in the investigation, handling, defense and/or prosecution of the legal matters of Clients set forth above shall be either (a) advanced by Client, if requested by Attorney, or (b) reimbursed to Attorney by Client on written request from Attorney. Said expenses shall include . . . expert witness and consultant fees . . . and any other expense related to the Attorney's efforts on behalf of Client in the legal matters set forth above. . . . Client hereby agrees to pay all such expenses of Attorney, within ten (10) days of the date reflected on any written request for [sic] Attorney for reimbursement of expenses.

Section 5 of the agreement concerned the participation and payment of the fees of other attorneys in the case:

> **5). Authority of Attorney:** Attorney is hereby granted the privilege, with the subsequent additional consent in writing of Client, to associate other attorneys to aid in the investigation and/or prosecution of this claim, provided that in such event, the fees of any such associate attorneys shall be paid by Attorney.

Reagan alleged in his petition that section 4 applied and that Adams had authority pursuant to section 4 to hire Reagan in a non-legal capacity to provide litigation and trial-support services for NationsGas in the Sanchez lawsuit.

In its motion for summary judgment, NationsGas asserted that section 5 of the agreement applied. NationsGas argued that Reagan was an attorney providing legal services during the trial, so pursuant to section 5, Adams, and not NationsGas, was responsible for paying Reagan.

We agree with NationsGas. Reagan is an attorney, and Adams "associate[d]" with him "to aid in the . . . prosecution of this claim" by providing litigation and trial-support services as well as legal services such as consulting on jury selection and the jury charge and researching an issue for the jury charge. Section 5 does not require that the "associa[tion]" be for the provision of legal services by the other attorney. Instead, section 5 applies if the other attorney "aid[s] in the investigation and/or prosecution of this claim." Reagan does not dispute that his non-legal services

–4–

aided in the prosecution of NationsGas's claim. Therefore, section 5 applies, and NationsGas had no responsibility under the attorney–client agreement to pay Reagan. Even if NationsGas might have had a responsibility under section (4) to reimburse Adams for any fees Adams paid to Reagan if Adams sent NationsGas a written request for reimbursement of those expenses, neither section (4) nor section (5) required NationsGas to pay Reagan directly.

In his response to the motion for summary judgment and in his appellant's brief, Reagan argues that Adams, as the attorney for NationsGas, had authority to create a contractual relationship between Reagan and NationsGas. Reagan cites two cases in support of this argument: *Davis v. Chaparro*, 431 S.W.3d 717 (Tex. App.—El Paso 2014, pet. denied), and *Eppler, Guerin & Turner, Inc. v. Kasmir*, 685 S.W.2d 737 (Tex. App.—Dallas 1985, writ ref'd n.r.e.). Both cases involved contractors hired for litigation services who sued the attorneys who hired them for their fees. *Davis*, 431 S.W.3d at 719 (language translation services); *Eppler*, 685 S.W.2d at 738 (valuation of securities). In *Eppler,* we held "that when an attorney contracts with a third party for the benefit of a client for goods or services to be used in connection with the attorney's representation of a particular client and the third party is aware of these facts, the attorney is not liable on the contract unless he either expressly or impliedly assumes some type of special liability." *Eppler*, 685 S.W.2d at 738. We concluded the attorney was not liable for the plaintiff's services because the attorney proved the plaintiff's services were for a lawsuit on behalf of the attorney's client and the attorney disclosed the client's identity. *Id.* In *Davis*, the court of appeals quoted from *Eppler* but concluded the attorney could be liable because the attorney failed to prove he was hiring the plaintiff as an agent for his client. *Davis*, 431 S.W.3d at 724–26. These cases are not relevant because they concern the attorney's liability or lack thereof to contractors hired to provide litigation services. The cases do not address the circumstances under which an attorney may bind its client to pay the fees of contractors hired by the attorney to assist in the client's case.

However, to the extent they may imply that if the attorney is not liable for payment of the fees then the client must be liable, that rationale does not apply in this situation where the attorney–client agreement specifically provided that the attorney would pay the fees of certain contractors. As discussed above, the agreement between Adams and NationsGas provided that Adams, would pay the fees of any additional attorneys aiding in the prosecution of the claim. Reagan is an attorney who associated with Adams to aid in the prosecution of the case. Therefore, pursuant to section 5 of the agreement, NationsGas was not liable to Reagan for his fees.

Reagan also cites *Portnow v. Berg*, a case in which a psychiatrist sued the attorney who hired him to assist in a criminal case. 593 S.W.2d 843, 844–45 (Tex. App.—Houston [1st Dist.] 1980, no writ). In that case, the court of appeals stated, "The attorney may bind his client to pay for reasonable expenses incurred by the attorney instant to the preparation and trial of a case, including the fee of an expert witness." *Id.* at 845–46. This statement is essentially what section (4) of the attorney–client agreement provides, that NationsGas will reimburse Adams for expenses he incurs, including "expert witness and consultant fees." This statement from *Portnow* does not address whether a contractor may sue the attorney's client directly. *Portnow* did not address that issue; instead, the only issue in the case was whether a psychiatrist's agreement with the attorney who hired him was based on a written contract subject to a four-year statute of limitations. *Id.* The case did not address the issue in this case, whether a contractor hired by an attorney to provide litigation services may sue the client for payment of those services.

NationsGas proved conclusively there was no contract requiring it to pay Reagan, and Reagan failed to present evidence raising a genuine issue of material fact that any contract required NationsGas to pay him. We conclude Reagan has not shown the trial court erred by granting NationsGas's motion for summary judgment on Reagan's claim for breach of contract. We overrule Reagan's first issue.

## QUANTUM MERUIT

In his second issue, Reagan contends the trial court erred by granting NationsGas's motion for summary judgment on Reagan's claim for quantum meruit. "Quantum meruit is an equitable remedy that is 'based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted.'" *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732 (Tex. 2018) (quoting *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005) (orig. proceeding)). The purpose of the remedy is "to prevent a party from being 'unjustly enriched' by 'retain[ing] the benefit of the . . . performance without paying anything in return.'" *Id.* (quoting *Truly v. Austin*, 744 S.W.2d 934, 938 (Tex. 1988)). To recover on a quantum meruit claim, a party must prove: (1) it rendered valuable services or furnished valuable materials; (2) for the person sought to be charged; (3) the person sought to be charged accepted those services and materials, and used and enjoyed them; and (4) the person sought to be charged was reasonably notified that the person performing the services or furnishing the materials was expecting to be paid by the person sought to be charged. *Id.* at 732–33. Recovery under the theory of quantum meruit is generally precluded when there is a valid contract covering the services or materials furnished. *Id.* at 733.

In the motion for summary judgment, NationsGas asserted quantum meruit did not apply because there was a contract for Reagan's services, Reagan's services were provided for Adams and not for NationsGas, and NationsGas was not on notice that Reagan expected to be paid by NationsGas.

NationsGas asserted there was a contract for Reagan's services, which precludes the remedy of quantum meruit.[4] *See Truly*, 744 S.W.2d at 936 ("As a general rule, a plaintiff who seeks to recover the reasonable value of services rendered or materials supplied will be permitted

---

[4] Quantum meruit may be applied even though there is a contract in situations where the defendant's breach of the contract prevents the plaintiff from completing performance. In that situation, the plaintiff may recover in quantum meruit for the value of the services provided. *See Beler v. De Lara*, 565 S.W.2d 319, 321 (Tex. App.—San Antonio 1978, no writ); *Coon v. Schoeneman*, 476 S.W.2d 439, 440–41 (Tex. App.—Dallas 1972, writ ref'd n.r.e.). This case does not involve that situation.

to recover in quantum meruit only when there is no express contract covering those services or materials."). As discussed above, the attorney–client agreement between NationsGas and Adams did not create a contractual relationship between NationsGas and Reagan. Reagan pleaded that Adams "hired" him. Adams testified in his affidavit that he "hired him [Reagan] on behalf of NationsGas" to provide the computer-generated visual presentation and to present it to the jury. Reagan testified in his affidavit that "Mr. Adams, as NationsGas['s] attorney, hired me" to create the presentation and to present it to the jury. The word "hire" means "[t]o engage the labor or services of another for wages or other payment." *Hire*, BLACK'S LAW DICTIONARY (10th ed. 2014). The phrase "engage the labor or services" means there was an offer and acceptance to provide the labor or to perform the services. That the labor or services are "for wages or other payment" means there was consideration for the labor or services. Thus, the word "hire" contains within it all the elements of a contract. *See Tour De Force, Ltd. v. Barr*, 05-14-01430-CV, 2016 WL 1179417, at *2 (Tex. App.—Dallas Mar. 28, 2016, no pet.) ("For a contract to exist, there must be an offer, acceptance, and consideration."). When Adams and Reagan testified Adams "hired" Reagan to perform the services, they testified there was a contract between Reagan and Adams for Reagan to provide the services. Therefore, the record establishes there was a contract covering Reagan's services.

Reagan asserts that if there was no contract between him and NationsGas, he is entitled to assert a claim for quantum meruit against NationsGas regardless of whether there was an express contract for his services between him and Adams. The purpose of quantum meruit is to prevent a party from being unjustly enriched by retaining the benefits of a service without paying for it. *Hill*, 544 S.W.3d at 732. The evidence establishes that allowing NationsGas to retain the benefits of Reagan's services would not unjustly enrich NationsGas because NationsGas's agreement with

Adams was that Adams, and not NationsGas, would pay attorneys like Reagan who aided in the prosecution of the Sanchez lawsuit.

We conclude Reagan has not shown the trial court erred by granting NationsGas's motion for summary judgment on Reagan's claim for quantum meruit. We overrule Reagan's second issue.

## RULE 45 DAMAGES

NationsGas and the Millers bring an issue requesting damages for the filing of this appeal pursuant to Rule 45 of the Texas Rules of Appellate Procedure. TEX. R. APP. P. 45. They argue this is a frivolous appeal because there was a written, enforceable contract in the case that explicitly stated Adams would pay the fees of any attorneys aiding in the prosecution of the claim in the Sanchez lawsuit.

Rule 45 provides:

> If the court of appeals determines that an appeal is frivolous, it may—on motion of any party or on its own initiative, after notice and a reasonable opportunity for response—award each prevailing party just damages. In determining whether to award damages, the court must not consider any matter that does not appear in the record, briefs, or other papers filed in the court of appeals.

TEX. R. APP. P. 45. "An appeal is frivolous if, at the time asserted, the advocate had no reasonable grounds to believe judgment would be reversed or when an appeal is pursued in bad faith." *Njuku v. Middleton*, 20 S.W.3d 176, 178 (Tex. App.—Dallas 2000, pet. denied). We impose sanctions only under circumstances we find truly egregious. *D Design Holdings, L.P. v. MMP Corp.*, 339 S.W.3d 195, 205 (Tex. App.—Dallas 2011, no pet.). Although we have overruled Reagan's issues, their lack of merit does not necessarily equate to frivolousness. On this record, we do not conclude that the circumstances of this appeal were truly egregious. We resolve this issue against NationsGas and the Millers.

## CONCLUSION

We affirm the trial court's judgment.

/Lana Myers/
LANA MYERS
JUSTICE

Carlyle, J., concurs only in the judgment

regarding quantum meruit and joins the opinion in all other respects.

181085F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ROBERT J. REAGAN, Appellant

No. 05-18-01085-CV     V.

NATIONSGAS PARTNERS, LLC;
ROBERT F. MILLER, JR.; AND SHAWN
MILLER, Appellees

On Appeal from the 162nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-17-13584.
Opinion delivered by Justice Myers.
Justices Molberg and Carlyle participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees NATIONSGAS PARTNERS, LLC; ROBERT F. MILLER, JR.; AND SHAWN MILLER recover their costs of this appeal from appellant ROBERT J. REAGAN.

Judgment entered this 21st day of Augusts, 2019.