

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00452-CV

**MGR, INC.** and Miracle Body and Paint, Inc. d/b/a Miracle Body and Paint,
Appellants

v.

**GEICO CASUALTY COMPANY**,
Appellee

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2015-CI-18092
Honorable Barbara Hanson Nellermoe, Judge Presiding

Opinion by:      Sandee Bryan Marion, Chief Justice

Sitting:          Sandee Bryan Marion, Chief Justice
                 Patricia O. Alvarez, Justice
                 Liza A. Rodriguez, Justice

Delivered and Filed: February 13, 2019

AFFIRMED

Appellants MGR, Inc. and Miracle Body and Paint, Inc. d/b/a Miracle Body and Paint (jointly, "Miracle") appeal from the trial court's orders granting traditional and no-evidence summary judgment in favor of appellee Geico Casualty Company ("Geico"). We affirm the trial court's judgment.

## Background

Geico is an insurance company that provides automobile insurance policies to Texas residents. Under each automobile insurance policy, in the event of a covered vehicle damage claim,

Geico is obligated to pay "the prevailing market labor rates based on its overall experience in the specific market in question." Upon receipt of a vehicle damage claim, Geico inspects the vehicle and prepares a repair estimate for labor and replacement parts. Each estimate identifies the applicable labor rates Geico agrees to pay. The vehicle owner can then take the repair estimate and the vehicle to an auto body shop for repairs.

Miracle is an independently owned auto body shop in San Antonio. Miracle performed auto body work on vehicles insured by Geico, and Geico paid Miracle according to the labor rates disclosed in the Geico repair estimates. After completing the repairs, Miracle claimed Geico failed to pay the full amount for repairs to multiple vehicles because the labor rates in Geico's repair estimates are lower than the rates Miracle charges. Miracle sued Geico for breach of contract, breach of implied contract, quantum meruit, and suit on a sworn account, and, in the alternative, negligent misrepresentation, fraud, and fraud by nondisclosure.

Geico filed a motion for traditional and no-evidence summary judgment on Miracle's claims for breach of contract, breach of implied contract, and quantum meruit, and the trial court granted the motion. Geico then filed a second motion for traditional and no-evidence summary judgment on Miracle's claims for negligent misrepresentation, fraud, and fraud by nondisclosure, as well as a motion to strike Miracle's claim for suit on a sworn account. The trial court granted the motion to strike the suit on a sworn account claim and granted the second motion for traditional and no-evidence summary judgment on Miracle's tort claims. The trial court then entered a final judgment in Geico's favor. Miracle appeals.

### Discussion

In four issues on appeal, Miracle argues the trial court erred in granting Geico's traditional and no-evidence motions for summary judgment and Geico's motion to strike the suit on sworn account.

**A.      Standard of review**

Where, as here, a defendant moves for both traditional and no-evidence summary judgment and the trial court grants summary judgment without stating its grounds, we first review the trial court's decision as to the no-evidence motion for summary judgment. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). We review the grant of no-evidence summary judgment, both traditional and no-evidence, de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004).

A party moving for no-evidence summary judgment is entitled to judgment if, "[a]fter adequate time for discovery, . . . there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." TEX. R. CIV. P. 166a(i). The trial court "must" grant a no-evidence motion for summary judgment unless the non-moving party produces evidence raising a genuine issue of material fact. *Id.* "A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced." *Ridgway*, 135 S.W.3d at 600.

**B.      Breach of contract**

Miracle asserted claims against Geico for breach of contract and breach of an implied contract. To demonstrate breach of contract, Miracle must prove the existence of a valid contract with Geico. *See Brooks v. Excellence Mortg., Ltd.*, 486 S.W.3d 29, 36 (Tex. App.—San Antonio 2015, pet. denied) (listing elements of breach of contract claim). Whether a valid contract is express or implied in fact, it must be based on mutual assent of the parties. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 850 (Tex. 2009). In the case of an implied contract, mutual assent is inferred from the circumstances. *Id.* (citing *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972)). Mutual assent, or a meeting of the minds, may be evidenced by the parties' prior course of dealing. *E-Learning*

*LLC v. AT&T Corp.*, 517 S.W.3d 849, 858 (Tex. App.—San Antonio 2017, no pet.) (citing *Haws*, 480 S.W.2d at 609).

Geico argues Miracle did not produce more than a scintilla of evidence to establish the existence of any valid contract in which Geico agreed to pay Miracle based on labor rates in excess of the rates disclosed in the Geico repair estimates. Miracle concedes there is no express contract between the parties. Instead, Miracle argues the parties had an implied contract whereby Geico agreed to pay Miracle's invoices based on the "prevailing market labor rate" for work performed, which Miracle argues is the labor rate Miracle charged.

The only evidence Miracle identified in support of such an agreement is the affidavit of its President and CEO Manuel Rubio, which is attached to Miracle's response to Geico's first motion for summary judgment. Rubio contends: "[T]he long[-]standing course of dealing . . . between Geico and Miracle is based on an agreement between the parties that if Miracle does the reasonable and necessary repairs, Geico will pay the reasonable and necessary costs to make those repairs." In support, Rubio states: "Most other insurance companies pay rates that are higher than the rates Geico has unilaterally decided to pay and are now in this suit calling the 'prevailing market labor rate.'" Rubio contends Geico pays rates that "are less than the [rates paid by] other companies," and his affidavit refers to attached invoices paid by the "State Farm, Fred Loya, Travelers, and Hallmark" insurance companies.

While Rubio alleges a course of dealing in which Geico paid the "reasonable and necessary" cost of repairs, he does not allege the parties ever had a meeting of the minds as to what constitutes a "reasonable and necessary" amount, nor does he allege Geico ever paid Miracle any amount other than the amounts disclosed in the Geico repair estimates. And, while the invoices from other insurers might demonstrate Geico paid less for similar work, they do not demonstrate Geico ever agreed to pay more.

This case is similar to our recent opinion in *E-Learning.* In that case, the plaintiff and AT&T developed a course of dealing in which the plaintiff provided goods and services to AT&T on three projects. 517 S.W.3d at 853. When AT&T refused to pay the plaintiff for goods and services provided on a fourth project, the plaintiff sued, alleging breach of an implied contract. *Id.* Although AT&T never formally approved the plaintiff's project proposal for the fourth project, the plaintiff argued mutual assent to terms could be inferred from the parties' prior course of dealing. *Id.* at 859. The trial court granted summary judgment in AT&T's favor, and this court affirmed, concluding the plaintiff failed to produce evidence raising a fact question as to acceptance and mutual assent to terms for the fourth project. *Id.* We reasoned that although the parties had a long-standing course of dealing, the plaintiff did not show AT&T previously made payments without first formally approving the plaintiff's project proposals. *Id.* In other words, a prior course of dealing, on its own, was not evidence of mutual assent without evidence of prior assent to the same terms.

Similarly, here, the fact that Miracle and Geico have a long-standing course of doing business, on its own, is not sufficient to raise a fact question as to the existence of an implied contract on the terms Miracle now asserts. Rubio's conclusory statement that Geico paid the "reasonable and necessary" cost of repairs in the past is no evidence that Geico ever paid the cost of repairs *Miracle* determined was "reasonable and necessary." Therefore, because Miracle failed to produce evidence of mutual assent to the terms of an express or implied contract, we conclude the trial court did not err in granting Geico's no-evidence motion for summary judgment on Miracle's claims for breach of contract and breach of implied contract. In addition, because Geico filed a verified denial arguing it was a stranger to any account with Miracle, and the trial court concluded no such account (contract) existed, the trial court did not err by striking Miracle's claim for suit on a sworn account. *See Sanders v. Total Heat & Air, Inc.*, 248 S.W.3d 907, 914 (Tex.

App.—Dallas 2008, no pet.) ("A suit on sworn account is not an independent cause of action; it is a procedural rule for proof of certain types of contractual (account) claims.") (citing TEX. R. CIV. P. 185; *Rizk v. Fin. Guardian Ins. Agency, Inc.*, 584 S.W.2d 860, 862 (Tex. 1979)).

### C.      Quantum meruit

Miracle also asserted a claim for quantum meruit. "Quantum meruit is an equitable remedy that is 'based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted.'" *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732 (Tex. 2018) (quoting *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005)). To recover under this theory, a plaintiff must prove: "(1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) those services and materials were accepted by the person sought to be charged, and were used and enjoyed by him; and (4) the person sought to be charged was reasonably notified that the plaintiff performing such services or furnishing such materials was expecting to be paid by the person sought to be charged." *Id.* at 732–33.

Where, as here, a plaintiff renders services to an insured, courts applying Texas law have held the plaintiff does not have a quantum meruit claim against the insurer because any services rendered only indirectly benefit the insurer, if they benefit the insurer at all. *See Fisher v. Blue Cross & Blue Shield of Tex., Inc.*, No. 3:10-cv-2652-L, 2015 WL 5603711, at *13 (N.D. Tex. Sept. 23, 2015) (holding doctors who rendered medical services to insured patients had no quantum meruit claim against patients' insurer because "any possible benefit conferred on [insurer] was too attenuated and indirect"); *Tex. Spine & Joint Hosp., Ltd. v. Blue Cross & Blue Shield of Tex.*, No. 6:14-cv-952-JDL, 2015 WL 13649419, at *7 (E.D. Tex. May 28, 2015) (dismissing quantum meruit claim against insurer for medical services rendered to insureds); *Encompass Office Solutions, Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 966 n.11 (E.D. Tex. 2011) ("'It is counterintuitive to say that services provided to an insured are also provided to its insurer. The

insurance company derives no benefit from those services; indeed, what the insurer gets is a ripened obligation to pay money to the insured—which hardly can be called a benefit.'" (quoting *Travelers Indem. of Conn. v. Losco Grp.*, 150 F. Supp. 2d 556, 563 (S.D.N.Y. 2001))).

In this case, any services Miracle rendered were for the benefit of and accepted, used, and enjoyed by Geico insureds, not Geico. If Geico received any benefit, it was too indirect and attenuated to support a quantum meruit claim. *See Encompass Office Solutions*, 775 F. Supp. 2d at 966 & n.11. Therefore, because Geico failed to produce evidence that valuable services were rendered to and accepted by the person sought to be charged (Geico), the trial court did not err in granting Geico's no-evidence motion for summary judgment on Miracle's quantum meruit claim.

**D.     Fraud and negligent misrepresentation**

In the alternative to its contract and quasi-contract claims, Miracle asserted claims for negligent misrepresentation and fraud based on Geico's alleged misrepresentation that it would pay the "prevailing market labor rates," as determined by Miracle, for any work Miracle performed on Geico-insured vehicles. Miracle also asserted a claim for fraud by nondisclosure based on Geico's alleged failure to disclose that it would not pay the "prevailing market labor rates" determined by Miracle.

To state a claim for negligent misrepresentation or fraud, Miracle must have evidence of a material misrepresentation Geico made to Miracle. *See JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018) (listing elements of common law fraud); *E-Learning*, 517 S.W.3d at 861 (listing elements of negligent misrepresentation) (citing *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999)). Fraud by nondisclosure is a sub-category of fraud. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). To state a claim for fraud by nondisclosure, Miracle must have evidence that

Geico failed to disclose material facts to Miracle. *See E-Learning*, 517 S.W.3d at 862 (listing elements of fraud by nondisclosure).

In support of its fraud and negligent misrepresentation claims, Miracles relies exclusively on Manuel Rubio's second affidavit, which was filed in support of Miracle's response to Geico's second motion for summary judgment. Citing Rubio's affidavit, Miracle argues: "Geico made representations to Miracle during the course of business that it would pay for repairs if Miracle performed them." Rubio's affidavit, however, does not allege Geico or its agents ever represented that Geico would pay for repairs based on a labor rate determined by <u>Miracle</u>. Rather, Rubio's affidavit acknowledges Geico always paid for repairs based on the labor rates determined by <u>Geico</u> and set forth in the Geico repair estimates. Rubio acknowledges: "Geico demands that independent shops, like Miracle, comply with its internal arbitrary rules in order to be paid for reasonable repairs properly performed." While Miracle may take issue with Geico's policy of only paying the amounts set forth in the Geico repair estimates, Miracle has not demonstrated Geico ever misrepresented that policy or failed to disclose it to Miracle.

Because Miracle failed to identify more than a scintilla of evidence that Geico either represented that it would pay more than the amounts identified in the Geico estimates or failed to disclose that it would not do so, the trial court did not err in granting Geico's no-evidence motion for summary judgment on Miracle's fraud and negligent misrepresentation claims.

## Conclusion

Because we conclude the trial court did not err in granting Geico's no-evidence motions for summary judgment and motion to strike Miracle's suit on sworn account, we overrule Miracle's four issues on appeal and affirm the trial court's judgment.

Sandee Bryan Marion, Chief Justice