

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00281-CV

---

CRYSTAL SIGNS, INC. AND LANA HUFF A/K/A LANA LEWIS, APPELLANTS

V.

WELLS FARGO BANK, N.A., APPELLEE

---

On Appeal from the 131st District Court
Bexar County, Texas
Trial Court No. 2021CI19902, Honorable Monique Diaz, Presiding

---

July 30, 2024

## MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Wells Fargo Bank, N.A. brought suit against Crystal Signs, Inc. and Lana Huff a/k/a Lana Lewis (collectively referred to as "Crystal Signs") to recover outstanding amounts on a line of credit. The trial court granted summary judgment in favor of Wells Fargo and against Crystal Signs. On appeal, Crystal Signs contends that the trial court erred in its decision to grant summary judgment, arguing that there were genuine issues of material

fact regarding: (1) the existence of a contract or guarantee, (2) performance of the contract, and (3) a breach. We affirm.[1]

## Background

In 2021, Wells Fargo filed a lawsuit against Crystal Signs, Inc. and Lana Huff, as guarantor,[2] for allegedly defaulting on a line of credit amounting to $58,187.33. Huff responded with a general denial and special exceptions.

Wells Fargo filed a "motion for traditional" summary judgment, asserting that Crystal Signs' credit account number 1823 was in default and that Huff was personally liable as guarantor. In support, Wells Fargo presented a business record affidavit from Alma Felix, a loan workout specialist, along with documents evidencing Crystal Signs' indebtedness and Huff's personal guarantee.

The evidence shows that in 2005, Huff, acting as President of Crystal Signs, Inc., signed an agreement with Wells Fargo to open a Small Business Advantage Account with account number 4229 and a line of credit amounting to $55,000. The document included language stating that she "certifie[d] that [she] ha[d] read and agree[d] with the Terms and Conditions on the reverse side, including the personal guaranty."

Also in 2005, Huff signed an agreement titled "Wells Fargo Small Business Advantage Line of Credit Terms and Conditions." Huff accepted the terms and conditions on behalf of Crystal Signs and also accepted the terms of the guaranty in her individual

---

[1] Originally appealed to the Fourth Court of Appeals, this appeal was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001.

[2] Victor C. Huff, Jr., was also named as a defendant and subsequently nonsuited without prejudice.

capacity. She further agreed that the use of any feature of the Wells Fargo Small Business Advantage account or MasterCard would serve as evidence of her acceptance of the terms.

Huff also signed a "Business Direct Credit Application—Agreement and Personal Guarantee" as President of Crystal Signs and in her individual capacity. Therein, she agreed that "[b]y signing below, I also, in my individual capacity[,] jointly and severally unconditionally guarantee and promise to pay to the Bank all indebtedness of [Crystal Signs] at any time arising under or relating to any credit requested through this application . . . ." As guarantor, Huff waived rights to "presentment, demand, protest, notice of protest, and notice of non-payment." She also received a Wells Fargo Business Secured MasterCard subject to these terms and conditions, indicating her agreement on behalf of Crystal Signs to the bank's Customer Agreement. Thereafter, Crystal Signs accessed the small business advantage account.

In April 2012, Huff, as the owner and guarantor of Crystal Signs, signed an authorization to convert the small business advantage line of credit to a BusinessLine line of credit. This conversion resulted in the issuance of a new account number 1823. Crystal Signs received a BusinessLine Mastercard, which replaced the previous card and was subject to new terms and conditions. The authorization form also referenced the 2005 SBA application and her original line of credit ending in 4229 [the 2005 application and the account number for the original line of credit]. Per the 2012 agreement and a 2020 agreement, the parties defined a default as occurring when "a payment is not made when it is due."

3

In its motion for summary judgment, Wells Fargo presented evidence of a past due balance on the account in the amount of $58,187.53. In response, Crystal Signs argued fact issues precluded a legal determination that a contract or guarantee was breached. In addition to her legal arguments, Huff submitted an affidavit averring she was the owner and operator of Crystal Signs responsible for "daily operation, administration, and management of [the] business." She also averred that she "did not sign or agree to be a personal guarantor for Crystal Signs."

In April 2023, the trial court granted summary judgment in Wells Fargo's favor awarding $58,187.53 in damages and $4,940.00 in attorney's fees to be recovered from Crystal Signs and Huff, jointly and severally. On appeal, Crystal Signs single issue is multifarious, states a legal premise for relief followed by a general attack on the trial court's judgment with numerous arguments. *See Fleming v. NASA Fed. Credit Union*, No. 04-21-00555-CV, 2023 Tex. App. LEXIS 287, at *3 n. 3 (Tex. App.—San Antonio Jan. 18, 2023, no pet.) (mem. op.). For convenience, we will address Crystal Sign's numerous arguments as issues (1) through (7).

**Standard of Review**

"We review summary judgments de novo, taking as true all evidence favorable to the nonmovant, and indulging every reasonable inference and resolving any doubts in the nonmovant's favor." *Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 509 (Tex. 2022) (cleaned up). To prevail on a traditional motion for summary judgment, the movant must prove there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lightning Oil Co. v. Anadarko E&P Onshore, LLC,*

4

520 S.W.3d 39, 45 (Tex. 2017). "Once the movant produces evidence entitling it to summary judgment, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact." *Mann Frankfort Stein Lipp Advisors, Inc., v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

To prevail in its breach of contract claim, Wells Fargo needed to conclusively prove: (1) a valid, enforceable contract existed between the parties;[3] (2) that Wells Fargo performed on the contract; (3) that Crystal Signs breached the contract; and (4) that Wells Fargo sustained damages as a result of the breach. *See E-Learning LLC v. AT&T Corp.*, 517 S.W.3d 849, 858 (Tex. App.—San Antonio 2017, no pet.). To prevail in its guaranty claim against Huff, Wells Fargo was required to conclusively establish: (1) the guaranty contract exists and is owned by Wells Fargo; (2) the terms of the underlying contract; (3) conditions for liability occurring, and (4) Huff, as guarantor, failed or refused to perform the promise. *See Lee v. Martin Marietta Materials Southwest, Ltd.*, 141 S.W.3d 719, 720–21 (Tex. App.—San Antonio 2004, no pet.).

## Analysis

The summary judgment evidence established that in 2005, Wells Fargo offered Crystal Signs a $55,000 unsecured line of credit. Huff accepted the offer by signing an agreement and certified she had read the terms and conditions "including [a] personal guaranty." Huff also signed a Business Direct Credit Application—Agreement and

---

[3] A valid, enforceable contract exists when the following elements are shown: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds on the essential terms of the contract (mutual assent); (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *E-Learning LLC v. AT&T Corp.*, 517 S.W.3d 849, 858 (Tex. App.—San Antonio 2017, no pet.) (mem. op.) (citing *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App.—San Antonio 1999, pet. denied)).

Personal Guaranty, both as President of Crystal Signs and in her individual capacity. By signing, she agreed to unconditionally guarantee and promise to pay all debts of Crystal Signs arising at any time from the line of credit.

In 2012, Huff signed another agreement as owner and personal guarantor of Crystal Signs. This agreement converted the earlier line of credit into BusinessLine account number 1823. This agreement specifies that a "default" occurs when a payment is missed or when the account balance exceeds the credit limit. The evidence shows the account was past due and that Crystal Signs had also exceeded the credit limit. Wells Fargo's summary judgment evidence conclusively established a valid, enforceable contract, which Wells Fargo performed, and Crystal Signs breached, resulting in damages to Wells Fargo. We find Wells Fargo's summary judgment evidence conclusively establishes the existence of a valid enforceable contract between the parties that was performed by Wells Fargo and breached by Crystal Signs, causing Wells Fargo damages. We find that Wells Fargo's summary judgment evidence conclusively establishes its actions for breach of contract against Crystal Signs and breach of Huff's guarantee agreement.

On appeal, Crystal Signs argues that (1) Wells Fargo failed to establish any relationship between account numbers 4229 and 1823, (2) the conversion of account 4229 to 1823 lacks a signature and business name.[4] We address the arguments

---

[4] Crystal Signs also asserts that, to the extent Huff guaranteed Crystal Signs' performance under the line of credit, Wells Fargo was attempting to extend the guarantee beyond its original terms to impose liability for "affiliated" debt. However, because Crystal Signs did not raise this specific argument in the trial court, it has not properly preserved this issue for appellate review. *Raymond v. Pizza Venture of San Antonio*, *LLC*, No. 04-17-00061-CV, 2018 Tex. App. LEXIS 3628, at * 10–11 (Tex. App.—San Antonio May

together. In 2012, Huff signed an Authorization Form as President and Owner/Guarantor of Crystal Signs, Inc., expressly authorizing the conversion of the SBA Account ending in 4229 to a Wells Fargo BusinessLine of credit to maintain access to the unsecured credit source. Wells Fargo's uncontroverted evidence establishes that when Crystal Signs' line of credit account was converted from the Small Business Advantage account to a BusinessLine account, it received the corresponding account number 1823 and operated under revised terms. Appellants' first two issues are overruled.

We interpret Crystal Signs' third issue as objecting to the hearsay nature of Felix's affidavit. Because Crystal Signs did not raise this objection or an objection about a failure to comply with requisites for proving-up the business records exception in the trial court, the issue has been waived. *Trujillo v. Shafaii Invs., Ltd.*, No. 01-22-00819-CV, 2024 Tex. App. LEXIS 3125, at *24 (Tex. App.—Houston [1st Dist. May 7, 2024, no pet. h.). Nevertheless, even if this issue had been raised in the trial court, Felix's representations in her affidavit describe how Wells Fargo's documents satisfy the business records exception to the hearsay rule. TEX. R. EVID. 803(6). Issue 3 is overruled.

In her fourth issue, Crystal Signs complains there is no evidence that Crystal Signs breached its contract or that Wells Fargo performed. As illustrated in the preceding discussion regarding the history or extended credit to Crystal Signs and an unpaid balance, we hold that Wells Fargo presented conclusive summary judgment evidence, and that the breach was established as a matter of law.

---

23, 2018, pet. denied) (mem. op.) ("to preserve error for appellate review, a party's argument on appeal must comport with its argument before the trial court").

7

In issues (5), (6) and (7), Huff [also] contends her guarantee is invalid because her intention was only to obtain an unsecured line of credit, not agree to a guarantee, there is no indication Wells Fargo formally approved the extension of a line of credit to Crystal Signs, and the original document she received was presented as an "invitation." However, Wells Fargo was not required to prove that Huff *intentionally* guaranteed Crystal Signs' unsecured line of credit, "merely that she had contracted to do so." *See Bricknell v. Wells Fargo, N.A.,* No. 11-08-00203-CV, 2010 Tex. App. LEXIS 3042, at *3 (Tex. App.—Eastland Apr. 22, 2010, no pet.) (mem. op.). Moreover, Wells Fargo's performance by issuing the credit cards and carrying Crystal Signs' debt constituted both acceptance and consideration. *See Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 304 (Tex. 2009). Regarding her last point, regardless of whether the original document was an "offer" or an "invitation," the evidence shows that Huff accepted the proposed terms in 2005 when she signed the agreement and personal guarantee in her individual capacity. Accordingly, issues (5), (6), and (7) are also overruled.

## Conclusion

The trial court's judgment is affirmed.

Lawrence M. Doss
Justice

8