

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| VALLEY FORGE, INC. | § | No. 08-22-00084-CV |
| Appellant, | § | Appeal from the |
| v. | § | County Court at Law No. 3 |
| CK CONSTRUCTION, INC. | § | of El Paso County, Texas |
| Appellee. | § | |
| | § | (TC# 2021DCV3705) |

## O P I N I O N

Appellee CK Construction, Inc. (CK) filed a lawsuit claiming that Appellant Valley Forge, Inc. (Valley Forge) breached their construction contract by failing to pay all amounts promised after CK completed its contractual obligations to remodel a building owned by Valley Forge. Finding Valley Forge breached the contract, the trial court granted CK's motion for summary judgment and entered a money judgment against Valley Forge, granted CK's request for a judicial foreclosure of its lien on the subject property, and entered an award of attorney's fees. Valley Forge contends the trial court erred in granting summary judgment, as questions of fact remain on whether it was in breach and on the amount of any debt owed to CK. Because we agree that factual questions remain on both issues, we reverse the trial court's judgment and remand to the trial court for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The parties agree on the following key issues: (1) in October 2020, CK and Valley Forge entered into a contract whereby CK agreed to renovate and remodel a building in El Paso, Texas (the Project); (2) Valley Forge made several payments to CK as required by the contract while the Project was ongoing; (3) in February 2021, CK fulfilled its contractual obligations on the Project; and (4) Valley Forge attempted to make a final payment to CK in the amount it believed was owed, but CK refused the payment contending it was inadequate to satisfy Valley Forge's contractual obligations, which disagreement led to the present suit.

### A. CK's lawsuit

On October 19, 2021, CK filed suit against Valley Forge alleging Valley Forge breached the parties' contract by failing to pay $69,166.15 CK claimed was due and owing together with $440 for "service calls and maintenance repairs" for a total of $69,606.15. [1] In its petition, CK alleged that the parties' contract required Valley Forge to pay CK $492,577.62 for the Project work "plus 10% additional combined profit and overhead on additive change orders." CK further argued that the parties agreed a "5% retainage was to be withheld on the Project subject to additions and deletions for agreed upon changes." CK acknowledged that while the Project was ongoing, Valley Forge paid five invoices in accordance with the contract, but claims that after the Project was completed, it sent a sixth and final invoice to Valley Forge for the remaining amount of $69,606.15, which Valley Forge refused to pay. CK further alleged that it sent a demand letter to Valley Forge on August 10, 2021, seeking payment on the final invoice. According to CK, Valley Forge

---

[1] In its petition, CK also brought a claim for tortious interference with contract, contending that after completion of the Project, Valley Forge wrongfully contacted CK's subcontractors and sought to pay them directly. This claim, however, was not the subject of the summary judgment motion and was not addressed by the trial court in its order. We therefore do not address it in our analysis.

2

responded with a "nonsensical letter" contending the parties' contract was "flawed," that it was entitled to a credit, and suggesting that the parties should meet with the Project's architect, go to mediation, or let the matter be handled "by the attorneys."

CK then retained an attorney to pursue its lawsuit and filed a mechanic's and materialman's lien on the subject property in the amount it contended was owed under the contract.[2] In its lawsuit, CK sought damages in the amount of $69,606.15 for the alleged breach, a judicial order of foreclosure on the lien, a judicial sale of its interests in the subject property, and an award of attorney's fees. Valley Forge filed a general denial to CK's lawsuit.

### B. CK's Motion for Summary Judgment

On March 8, 2022, CK filed its motion for summary judgment, contending there were no factual disputes regarding its claim that Valley Forge had breached the parties' contract and it had conclusive evidence that it suffered damages in the amount of $69,606.15. As supporting evidence, CK attached an affidavit from its president, David Kessinger, in which he averred that the parties' contract called for a "lump sum price of $429,577.62 plus 10% additional combined profit and overhead on additive change orders" and that it further called for a "[f]ive percent retainage" to be withheld on the Project. Kessinger further averred that CK had complied with all of its contractual obligations but that Valley Forge had failed to fulfill its obligation to pay the full amount due under the contract, which he calculated to be $69,166.15, plus $440 for service calls and maintenance repairs. Kessinger attached a copy of a ten-page "Pay Application," which he asserted "sets out the amounts owing on the Project." CK also attached a copy of the mechanic's and materialman's lien that it filed on the subject property together with its supporting affidavit of lien. And finally, CK attached an affidavit from its attorney stating that CK had hired her firm in this "collection

---

[2] According to CK, the parties' contract contained no dispute resolution procedures.

action" and that CK had thus far incurred attorney's fees in the amount of $8,500 "in the attempt to collect the indebtedness of Valley Forge," which she attested was "reasonable and necessary."

CK referred to but did not provide a copy of the parties' contract, any change orders that Valley Forge authorized, any invoices that it sent to Valley Forge, or any of the correspondence between the parties.

### C. Valley Forge's response to the Motion for Summary Judgment

Valley Forge filed a timely response to CK's summary judgment on March 28, 2022, contending that disputed issues of material fact that made summary judgment improper. In particular, Valley Forge argued that it was not in breach of the contract, as it tendered a check for $40,165.38 to CK upon completion of the Project, which it believed was the total amount owed to CK at that time but that CK refused to accept the check. In addition, Valley Forge argued that foreclosure of CK's lien was improper given the parties' dispute over the amount of debt—if any— that Valley Forge owed CK.

Valley Forge attached an affidavit to its response from its president, Lee Urias, contending that CK was "incorrect" in stating the terms of the original contract, averring that the original contract was not for $492,577.62 and that it neither contained provisions for a "10% combined profit" nor for a "5% retainage." Urias further averred that Valley Forge never signed any of the "alleged changes on the project." As well, Urias contended that it did not owe CK $440 for the service call and repair fees, alleging there was a "warranty" that covered this cost. In addition, Urias attested that Valley Forge had tendered a check to CK for "final payment" in the amount of $40,165.38 after the Project was completed but that Kessenger refused to accept the check, claiming that Valley Forge owed it $51,000 at the time. According to Urias, he attempted to explain to Kessinger that there were "deductions" owed to Valley Forge that had "not been credited

correctly," but Kessinger "simply refused payment." Urias also contended that Valley Forge never received an itemized invoice from CK in the amount it is now demanding and that it never refused to pay any such invoice.

### D. The trial court's ruling and Valley Forge's response

The parties agree that the trial court sent their attorneys an email on April 5, 2022, stating that "the Judge has read Plaintiff's Motion for Summary Judgment and has granted the Motion."[3] The next day, Valley Forge filed "Defendant's Motion to Clarify Judgment or in the Alternative, Defendant Requests Findings [of] Fact and Conclusion[s] of Law." In the motion, Valley Forge expressed concern that it was "unclear" if the judge had read its response to CK's motion and asked the court to "issue a judgment clarifying its decision, or in the alternative provide Findings of Fact and Conclusions of Law." CK opposed the request for findings of fact, as such findings were not required in a summary judgment proceeding.

On April 7, 2022, the trial court issued its "Final Order Granting Plaintiff's Motion for Summary Judgment." In the order, the court stated "[a]fter reviewing the pleadings in this cause and the submission of the parties, the Court finds the Motion [for summary judgment] well-taken." In its order, the court found that Valley Forge breached its contract with CK and awarded CK its requested damages of $69,606.15 together with $8,500 in attorney's fees. In addition, it found that CK had shown its entitlement to foreclosure on its lien on the subject property, and after finding that CK had "perfected its lien," the court ordered the lien foreclosed and further ordered a judicial

---

[3] Although the parties agree that that the court's email made this statement, we note that it does not appear in the appellate record. In its brief, CK has attached a copy of the email as an appendix to its brief, together with an email that it sent to Valley Forge's counsel seeking approval of a proposed order it was submitting to the court. However, we may not consider documents in an appendix that are not in the appellate record. *See Bell v. State for S.E.G.*, 659 S.W.3d 21, 24 (Tex. App.—El Paso 2021, no pet.) (citing *Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 198–99 (Tex. App.—Houston [14th Dist.] 2002, no pet.)).

sale of the property pursuant to the lien. And finally, the order stated that it disposed of all claims and all parties and that "[a]ll relief not expressed granted herein is denied." Valley Forge appealed, raising five issues.

## II. CK'S BREACH OF CONTRACT CLAIM

In Issue Three, Valley Forge contends that the trial court erred in granting summary judgment in CK's favor on its breach of contract claim, asserting that it presented sufficient evidence to raise a factual dispute regarding whether it breached the parties' contract. We agree.

### A. Standard of review

An appellate court reviews a trial court's grant of summary judgment de novo. *See Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021) (citing *Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013)). A plaintiff moving for traditional summary judgment bears the burden of showing that there is no genuine issue of material fact on any element of his claim, and that he is entitled to judgment as a matter of law. *See 1320/1390 Don Haskins, Ltd. v. Xerox Commercial Sols., LLC*, 584 S.W.3d 53, 62 (Tex. App.—El Paso 2018, pet. denied) (citing TEX. R. CIV. P. 166a(c)). When the plaintiff-movant meets that burden, the burden then shifts to the defendant-nonmovant to disprove or raise an issue of fact as to at least one of those elements. *Id.* (citing *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014)). And we must then determine whether the defendant-nonmovant successfully raised an issue of fact, and in doing so, we review the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could do so and disregarding contrary evidence unless reasonable jurors could not. *Id.* (citing *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). If the nonmovant does not raise a fact issue on any

elements of a claim or defense, summary judgment is appropriate. *Id* (citing *Frost Nat. Bank v. Fernandez*, 315 S.W.3d 494, 508-09 (Tex. 2010)).

### B. Applicable law

A claim for "breach of contract requires pleading and proof that (1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach." *See Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019) (citing *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018)); *see also 1320/1390 Don Haskins, Ltd.*, 584 S.W.3d at 66. "To prove the first element (the existence of a valid contract), the plaintiff must establish: (1) an offer was made; (2) the other party accepted in strict compliance with the terms of the offer; (3) the parties had a meeting of the minds on the essential terms of the contract (mutual assent); (4) each party consented to those terms; and (5) the parties executed and delivered the contract with the intent that it be mutual and binding." *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502, n. 21 (Tex. 2018) (citing *E–Learning LLC v. AT & T Corp.*, 517 S.W.3d 849, 858 (Tex. App.—San Antonio 2017, no pet.). A particular breach-of-contract claim may involve disputes on any combination of these requirements, as well as disputes on numerous defenses the defendant may assert. *Id.*

### C. Analysis: factual disputes remain

Here, CK and Valley Forge agree that the parties entered into a contract for the remodeling of its building. However, they clearly disagree on the material terms of that contract, whether the terms were breached, and the amount that Valley Forge owed under the contract. As set forth above, CK contends that the original contract called for a lump sum payment of $429,577.62, a

"10% additional combined profit and overhead on additive change orders," and a "[f]ive percent retainage" that was to be withheld on the Project. Valley Forge, however, submitted Urias's affidavit in which he disputed all three of these contract terms. As a result, fact questions remain which preclude a summary judgment favorable to CK as a matter of law. [4]

Moreover, although Valley Forge acknowledges that CK performed its obligations under the contract, Valley Forge denies that it breached the contract, again referring to Urias's affidavit in which he averred that he attempted to tender performance under the contract by presenting CK with a check for the amount Valley Forge believed it owed. And CK does not dispute that Valley Forge attempted to tender performance but argues its performance was inadequate based on its calculations of the amount owed. And this is, in fact, the very heart of the parties' dispute.

CK, however, contends that Valley Forge did not sufficiently raise a dispute regarding the amount owed, arguing that Urias's affidavit did not expressly deny CK's contention that it owed CK $69,166.15 under the terms of the contract. According to CK, Urias's affidavit instead focused primarily on his assertion that Valley Forge never received an itemized invoice for that amount and that it was therefore not in breach of contract by failing to pay it. And CK argues that Kessinger's affidavit stating the amount due under the contract—which it contends was uncontroverted—was sufficient to sustain its motion for summary judgment on its breach of contract claim. *See Cha v. Branch Banking & Tr. Co.*, No. 05-14-00926-CV, 2015 WL 5013700, at *3 (Tex. App.—Dallas Aug. 25, 2015, pet. denied) (mem. op.) (where guarantors of note did not dispute the amount owed and instead only complained about the bank's failure to itemize the

---

[4] We note that in general, the question of whether an alleged agreement constitutes an enforceable contract is a question of law, which we review de novo. *See Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 141 (Tex. App.—Dallas 2012, no pet.). Here, however, without a contract in the record, we cannot make any determination regarding its validity or enforceability.

8

amounts of principal and interest due, trial court properly granted summary judgment based on the bank's uncontroverted affidavit stating the amount due on the note).

Contrary to CK's argument, however, Urias's affidavit did not focus solely on CK's failure to provide a copy of the invoice it allegedly sent or its failure to provide it with an itemized statement of the amounts due. Instead, reviewing Urias's affidavit in the light most favorable to Valley Forge, as we must, we discern that Urias disputed the amount and terms of the original contract, disputed whether change orders were made, denied the validity of the $440 service charge, and set forth his belief that Valley Forge was entitled to deductions that altered the amount due. And we can further discern that Urias believed the amount due under the contract was $40,165.38, rather than $69,166.15 as claimed by CK, given the fact that he tendered a check to CK in that amount as "final payment" under the contract.

We find Urias's affidavit sufficient to raise at least two related issues of fact, which if resolved in Valley Forge's favor, would negate the third and fourth elements of CK's breach-of-contract claim. First, Urias's affidavit raises the issue of whether Valley Forge was in fact in breach of the parties' contract (element three). A breach occurs when a party fails or refuses to do something he has promised to do under the terms of the parties' contract. *See B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (citing *Mays v. Pierce*, 203 S.W.3d 564, 575 (Tex. App.—Houston [14th Dist.] 2006, pet. denied)). Urias's affidavit, if believed, supports a finding that Valley Forge attempted to fulfill its promise to pay CK in accordance with the terms of the contract by tendering a check in the amount it believed was due but that CK improperly refused to accept the payment. And in turn, this would relieve Valley Forge of its liability for its alleged non-performance. *See generally Waco Tap R. Co. v. Shirley*, 45 Tex. 355, 374 (1876) (if a party proffers to perform a condition precedent and the other

9

party refuses to accept its performance, the proffer "will exonerate the party making the tender from liability for non-performance"); *II Deerfield Ltd. P'ship v. Henry Bldg., Inc.*, 41 S.W.3d 259, 265 (Tex. App.—San Antonio 2001, pet. denied) ("It is elementary that one who prevents or makes impossible the performance of a condition precedent upon which his liability under a contract is made to depend cannot avail himself of its nonperformance.") (quoting *Rich v. McMullan*, 506 S.W.2d 745, 747 (Tex. Civ. App.—San Antonio 1974, writ ref'd n.r.e.)); *SLT Dealer Group, Ltd. v. AmeriCredit Fin. Services, Inc.*, 336 S.W.3d 822, 831 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (same). Similarly, to the extent Valley Forge's refusal to pay the amount demanded by CK (which Urias contends at the time was $51,000) was based on an honest belief that CK was mistaken in demanding that amount, this would also raise a question of fact regarding whether Valley Forge was in breach of the parties' contract for its alleged non-performance. *See DeLuca v. Munzel*, 673 S.W.2d 373, 376 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.) (recognizing that when a defendant has refused to pay a "stated amount" as demanded by the plaintiff, a factual issue may be shown to exist on the plaintiff's breach-of-contract claim when the defendant asserts that the refusal was the result of "an honest, bonafide dispute over the amount of indebtedness owing").

Second, Urias's affidavit also raises a factual question on the issue of the proper amount of damages to be awarded to CK—if any—assuming any breach occurred (element four). "The universal rule for measuring damages for breach of contract is just compensation for the loss or damage actually sustained." *See Baeza v. Hector's Tire & Wrecker Serv., Inc.*, 471 S.W.3d 585, 595 (Tex. App.—El Paso 2015, no pet.) (citing *Davis v. Chaparro*, 431 S.W.3d 717, 726 (Tex. App.–El Paso 2014, pet. denied). Under this standard, a non-breaching party is generally entitled to all actual damages necessary to put him in the same economic position in which he

would have been had the contract not been breached. *Id.* Here, however, a dispute exists as to the amount of actual damages that would put CK in the same economic position it would have been in had no breach occurred. As set forth above, the parties disagree on the terms of the contract itself, including the original amount Valley Forge agreed to pay CK as well as whether Valley Forge was properly charged for change orders, whether it was properly charged for the service call, and whether it was entitled to deductions on the amount owed. And without the contract or any further evidence to support CK's claim, it is impossible to determine on this record what damages, if any, CK suffered as the result of Valley Forge's alleged breach of contract.

We therefore conclude that the trial court erred in granting summary judgment on CK's breach-of-contract claim. *See Gilbert v. Kalman*, 650 S.W.3d 135, 145–46 (Tex. App.—El Paso 2021, no pet.) (reversing trial court's grant of partial summary judgment on appellant's counterclaim for breach of contract where questions of fact remained on the issue of damages); *see also McCulley Fine Arts Gallery, Inc. v. "X" Partners*, 860 S.W.2d 473, 478 (Tex. App.—El Paso 1993, no writ) (reversing summary judgment where a question of fact existed on the amount of damages suffered by plaintiff as the result of defendant's breach of contract); *Llopa, Inc. v. Nagel*, 956 S.W.2d 82, 89 (Tex. App.—San Antonio 1997, pet. denied); (where nonmovant's affidavit disputed the amount owed under a contract, summary judgment was improper).

We sustain Valley Forge's Issue Three.

## III. THE CLAIM FOR JUDICIAL FORECLOSURE

In Issue Four, Valley Forge contends that because the trial court erred in entering summary judgment in CK's favor on its claim for breach of contract, it similarly erred in entering its order foreclosing on CK's lien. We agree.

11

In Texas, mechanic's and materialman's liens are created both by statute and by the state Constitution. *See* TEX. CONST. ART. XVI sec 37; TEX. PROP. CODE ANN. § 53.021, et. seq.; *see also Hayek v. W. Steel Co.*, 478 S.W.2d 786, 790–91 (Tex. 1972) (recognizing the two types of mechanic's and materialman's liens in Texas). Both provisions allow a contractor to file a lien to secure payment for labor done or materials furnished for the construction or repair of property. *See* TEX. PROP. CODE ANN. § 53.023 (1) (providing for a lien to secure payment for "the labor done or material furnished for the construction, repair, design, survey, or demolition."); TEX. PROP. CODE ANN. § 53.021 ("A person has a lien if the person, under a contract with the owner . . . . labors or furnishes labor or materials for construction or repair of an improvement."); TEX. CONST. ART. XVI, § 37 ("Mechanics, artisans and material men, of every class, shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor . . . .").

However, a person seeking to foreclose on such a lien must establish that he furnished labor or materials to the owner of the property that was improved and the amount owed for doing so, i.e., he must establish that a "valid" debt is owed by the owner of the improved property. *See Crawford Servs., Inc., v. Skillman Intern firm, LLC*, 444 S.W.3d 265, 271 (Tex. App.—Dallas 2014, pet. dism'd) (recognizing that trial court must determine whether a debt is valid and the lien perfected before issuing an order judicially foreclosing on the lien) (citing *CVN Group, Inc. v. Delgado*, 95 S.W.3d 234, 241 (Tex. 2002) (recognizing that debt issues must be resolved before judicial foreclosure of a lien may be ordered)); *see also Wallace Roofing, Inc. v. Benson*, No. 03–11–00055–CV, 2013 WL 6459757, at *12 (Tex. App.—Austin Nov. 27, 2013, pet. denied) (mem. op.) ("To prevail on a claim to foreclose a constitutional mechanic's lien, a lienholder must prove the performance of the labor and the existence of the debt.").

Here, we have determined that the trial court erred in entering summary judgment against Valley Forge on its breach of contract claim due, in part, to outstanding factual issues regarding the amount and validity of any debt that Valley Forge may owe to CK for the improvements on its property. Accordingly, as Valley Forge's debt has not yet been properly established, we conclude that the trial court erred in entering its order of judicial foreclosure on the lien and sale of the property to satisfy the lien.

We sustain Valley Forge's Issue Four.

Given our conclusion that the trial court erred in granting summary judgment, we need not address Valley Forge's Issues One, Two, and Five, which consist of procedural arguments that the trial court erred by: ruling without considering its response to CK's motion for summary judgment; not holding a hearing and not ruling on Valley Forge's motion after the ruling; not issuing findings of fact and conclusions of law; and entering judgment without Valley Forge's approval as to its form and substance.

## IV. CONCLUSION

We reverse the trial court's order granting summary judgment on CK's claim for breach of contract and for the enforcement of its lien, and we reverse the trial court's award of attorney's fees and costs. [5] We remand the matter to the trial court for further proceedings consistent with our opinion.

---

[5] We note that CK sought an award of attorney's fees pursuant to the Texas Practices and Remedies Code, which provides for an award of reasonable and necessary attorney's fees to the prevailing party. *See* TEX. CIV. PRAC. & REM. CODE § 38.001 (providing for an award of attorney's fees in a cause of action for breach of contract); *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) ("To recover attorney's fees under Section 38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable and (2) recover damages."). Because we are reversing the trial court's grant of summary judgment on both of CK's claims, CK is no longer the prevailing party at this stage of the proceedings, and we must therefore reverse the trial court's award of attorney's fees as well. *See Pearl Res. Operating Co. LLC v. Transcon Capital, LLC*, 641 S.W.3d 851, 861 (Tex. App.—El Paso 2022, no pet.) (because we reversed the trial court's judgment in favor of plaintiff, it was no longer the prevailing party under applicable statute providing for an award of fees to prevailing party, and therefore, the trial court's award of attorney's fees and costs

LISA J. SOTO, Justice

May 11, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.

must also be reversed); *Harris Cnty. Appraisal Dist. v. Reynolds/Tex., J.V.*, 884 S.W.2d 526, 529 (Tex. App.— El Paso 1994, no writ) (same).